## FYRAC MFG. CO. et al. v. BERGSTROM.

Circuit Court of Appeals, Seventh Circuit.
February 7, 1928.

Rehearing Denied March 6, 1928.

No. 3938.

1. Patents ⟐287(6)—Stockholder or officer of infringing corporation held not personally liable for such infringement.

Individual defendant *held* not liable for infringement of patent by corporation in which he held stock and of which he was officer.

2. Patents ⟐202(2)—Legatee of prior assignee of patent held estopped to assert title and claim infringement by defendants, where assignment to defendants was carried out, except on Patent Office records.

Plaintiff, sole legatee of assignee of patent, *held* estopped under doctrine of equitable estoppel from asserting title to patent and claiming infringement, where assignee's agreement contemplated second assignment to defendants, who had physical possession of letters patent, and agreement was carried out, except for assignment on records of Patent Office.

Appeal from the District Court of the United States for the Western Division of the Northern District of Illinois.

Patent infringement suit by Ellen Bergstrom against the Fyrac Manufacturing Company and another. From a decree enjoining defendants from further infringing a certain patent, and awarding damages for past infringements, they appeal. Reversed, with directions.

R. K. Welsh, of Rockford, Ill., and Ira J. Wilson, of Chicago, Ill., for appellants.

Samuel N. Banning, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This appeal is from a decree enjoining appellants

from further infringing patent No. 1,098,705 covering "an Improvement in Spark Plugs" and awarding damages for past infringements. Appellants defended on the ground that appellee was estopped from asserting title to the patent. Appellant Hogland relied on the additional defense that he was not an infringer.

All the testimony was presented in the form of depositions and the District Judge neither saw nor heard any witness. Many objections were made to questions propounded and answers given but the court received all of the evidence excluding, no doubt, that which was neither competent nor relevant, when reaching its conclusion.

Notwithstanding the unsatisfactory state of the evidence as to certain issues, the salient facts upon which appellants rely are dependably and thoroughly established.

The patent was issued June 2, 1914, to Adolph G. and Arthur J. Bergstrom, sons of Andrew N. Bergstrom, a friend of appellant F. G. Hogland. After producing their spark plug, and before and after the issuance of the patent, the inventor sought to place it on the market. They met with indifferent success and Andrew N. Bergstrom sought the financial aid of his friend, Hogland, that the enterprise might be conducted on a larger scale. The result of their negotiations is embodied in a written document herewith set forth hæc verba.

"Rockford, Ill., Jan. 9, 1915.
"Mr. F. G. Hogland, Rockford, Ill.

"Dear Sir: Please be advised that the patent covering Spark Plug issued to Arthur and Adolph Bergstrom, my sons, is to be assigned to me and the assignment is to be recorded in the patent office.

"In consideration of your agreement to undertake and organize a Corporation with an authorized capital of $25,000.00 one fifth of this capital to be issued to me as fully paid up and non-assessable, I hereby agree that the patent referred to shall be assigned to the proposed company when the articles of incorporation have been completed.

"I further agree that I will subscribe for $1,000.00 of the capital stock which I will pay in cash.

"It is understood that Adolph Bergstrom shall be given a position with the Company and which position shall continue as long as he makes himself useful in the furtherance of the Company's affairs.

"It is also understood that the preliminary steps of the organization of the Company shall be taken within the next ten days, and that the capital stock shall be subscribed and the organization of the Company completed not later than March 1, 1915.

"Yours truly,    A. N. Bergstrom.

"In consideration of the above letter I agree to immediately take steps to organize the Company in compliance with the above proposition.    F. G. Hogland."

Patentees thereupon assigned the patent to their father and preliminary steps were taken to incorporate under the name of Bergie National Spark Plug Company. Its capital stock was $5,000, 30 shares of which were issued to Andrew N. Bergstrom and 10 shares each to the two sons. No consideration was paid for this stock, other than that which may be inferred from the foregoing agreement. At the first meeting of the subscribers, directors were chosen and steps taken to increase the capital stock from $5,000 to $25,000. The final step necessary to complete the incorporation of this company was not taken, but the Bergie National Spark Plug Company operated thereafter as a de facto corporation.

The National Lock Company, in which Hogland was largely interested, thereafter made the spark plugs and advanced the necessary money with which to carry on the business. At one time the amount thus advanced exceeded $35,000. On the 21st day of November, 1917, at a special meeting of the stockholders of the Bergie National Spark Plug Company, an application to the secretary of state to organize the Bergie National Spark Plug Company with a capital stock of $25,000 was prepared and submitted. On March 23, 1918, the charter was duly issued and the corporation became a de jure corporation.

It appeared from the minutes of the corporate meeting that $20,000 was paid into the corporation in cash and property turned over amounting to $5,000. Some years thereafter the corporation's name was twice changed and the capital stock twice increased.

The conclusion is unavoidable that "the property turned over" for the issuance of the $5,000 of stock to Bergstrom was the patent, that "the cash ($20,000) paid in" was furnished by those whom Hogland had brought into the company. It is equally clear that the $25,000 corporation was organized pursuant to the agreement reached January 9, 1915, heretofore quoted.

In the corporate minutes of March 27, 1918, at which meeting A. G. Bergstrom was present, the following appears:

"A. G. Bergstrom having originally

agreed to transfer to the Company full ownership of patent serial # 1098705 which was issued on June 2, 1914, for a consideration of $5,000.00 was presented with 50 shares of common stock par value $100.00 each. He accepted same in full settlement of past, present and future demands."

The business of manufacturing and selling the spark plugs was, from March, 1918, carried on by the de jure corporation. On January 1, 1919, the company paid a 60 per cent. dividend and A. G. Bergstrom received $3,000.

Differences arising, A. G. Bergstrom severed his connection with the company. He borrowed money for another enterprise and deposit his stock as collateral. Failing to pay his note, the stock was subsequently sold and the creditor applied the proceeds upon his indebtedness.

Appellee was named as the sole and residuary legatee in the will of her husband who died May, 1916. In the administration of his estate an inventory was filed. No mention was made therein of the patent in suit.

In 1921 when the Fyrac Manufacturing Company discovered that the Patent Office records failed to disclose an assignment of the patent from A. N. Bergstrom to its predecessors, appellee was requested by letter to execute such an assignment. Instead of doing so she, upon learning that the title to the patent was in the name of her husband, caused his estate to be reopened and a new inventory filed wherein she listed the patent in suit.

[1] Hogland's appeal. The record fails to disclose any fact which would justify the court in holding Hogland as an infringer. If any infringement occurred, it was by reason of the transactions of the corporations— Fyrac Manufacturing Company or the Bergie National Spark Plug Company. Appellant Hogland was neither an officer nor a stockholder of the Fyrac Manufacturing Company. True, he was connected with the National Lock Company as a stockholder and officer and this company made the spark plugs for the Bergie National Spark Plug Company and the National Spark Plug Company. But holding stock or being an officer of this company did not of itself make him personally liable for its infringements. Dangler v. Imperial Mach. Co. (C. C. A.) 11 F.(2d) 945.

[2] We are equally satisfied that appellee should not be permitted to assert title to this patent as against appellant Fyrac Manufacturing Company. Every fact which calls for the application of the doctrine of equitable estoppel is here present to prevent appellee from asserting title to the patent:

(a) The aforesaid agreement contemplated an assignment of the patent.

(b) The issuance of stock to the amount of $5,000 in both the de facto and the de jure corporation (Bergie National Spark Plug Company) was likewise pursuant to this agreement. No other consideration for its issuance is disclosed or suggested.

(c) The corporation had physical possession of the letters patent.

(d) The moneys advanced to the de facto company and later paid to the de jure corporation for $20,000 worth of its stock was advanced and paid on the belief that the corporation owned the patent to the spark plug. The sole business of the corporation was to make and sell these spark plugs and it is inconceivable that such advances and purchases of stock would have been made without reliance upon the company's right to make the patented article.

(e) Dividends were paid on the stock and Adolph Bergstrom received and retained dividends to the knowledge of the appellee.

(f) In the settlement of the estate of the deceased Bergstrom, the patent was not inventoried and no claim to it was made. The parties interested in the estate apparently acted upon the assumption that the deceased had conveyed this patent to the corporation as he had agreed to do and had received the stock in the company as the consideration for the assignment of the patent.

(g) The spark plug was extensively advertised by the Fyrac Manufacturing Company and the Bergie National Spark Plug Company and to the knowledge of appellee and her sons. This advertisement campaign was carried on extensively for years. During a portion of this time one of the Bergstroms was an officer of the company, attended its meetings, and was employed by the company in a capacity that made it impossible for him not to know of the company's business and of its asserted right to manufacture the patented spark plug.

(h) Appellee, the mother of the president of the company, knew of her son's employment and of the business the company was engaged in.

Under these circumstances appellee is estopped to assert title to the patent. Ford Motor Co. v. K. W. Ignition Co. (C. C. A.) 278 F. 373.

In reaching this conclusion we have wholly ignored the testimony of Hogland, to which appellee objected, and wherein he repeated a

conversation had by himself with the deceased Bergstrom shortly before that gentleman died.

The decree is reversed, with directions to dismiss the complaint.